IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| **JULIA GARFIELD, individually and on behalf of all others similarly situated,** | : : : | Civil Action No.: 0:23-cv-60647 |
| | : : | Class and Collective Action Complaint |
| Plaintiff, | : : | |
| v. | : : | Jury Trial Demanded |
| | : | |
| **SCRIBEAMERICA, LLC** | : : | |
| Defendant. | : : : : | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Julia Garfield ("Garfield" or "Plaintiff"), through her undersigned counsel, files this Class and Collective Action Complaint against Defendant ScribeAmerica, LLC ("Defendant" or "ScribeAmerica"), individually and on behalf of all other similarly-situated individuals who performed work for ScribeAmerica, seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and New Hampshire's Minimum Wage Law ("NHMWL"), N.H. Rev. Stat. Ann. § 279, *et seq*. The following allegations are based on personal knowledge as to Plaintiff' own conduct and on information and belief as to the acts of others.

## INTRODUCTION

1. ScribeAmerica is the nation's most frequently used medical scribe company that provides Medical Scribes and medical documentation support services to healthcare providers throughout the United States. ScribeAmerica employs over 25,000 Scribes and Care Team Assistants that service 3,500 hospitals and outpatient healthcare providers in 48 states and the District of Columbia.

2. This case is about ScribeAmerica's knowing and willful failure to pay their hourly,

non-exempt Medical Scribes a minimum wage for all hours worked, including required study hours, during ScribeAmerica's training program.

## JURISDICTION AND VENUE

3. Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims derive from a common nucleus of operative facts.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant was incorporated in Florida; conducts business in this District; and is subject to personal jurisdiction in this District.

## PARTIES

6. Plaintiff Julia Garfield is an individual currently residing in Plymouth, New Hampshire. Plaintiff worked for ScribeAmerica as a Medical Scribe between approximately March 18, 2022, and May 16, 2022. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to being a Plaintiff in this action. *See* Exhibit A.

7. ScribeAmerica is incorporated in California, and maintains its headquarters in Fort Lauderdale, Florida. ScribeAmerica is a healthcare services company that provides medical scribes to healthcare providers throughout the country. ScribeAmerica "employs over 25,000 Scribes and [Care Team Assistants] in more than 3,500 hospitals and care settings."[1] ScribeAmerica operates throughout the United States, including in this judicial district.

8. The unlawful acts alleged in this Complaint were committed by ScribeAmerica

---

[1] *See* Press Release, *ScribeAmerica Appears on the Inc. 500|5000 List for Ninth Consecutive Year*, www.scribeamerica.com (August 14, 2019). https://www.scribeamerica.com/press_release/scribeamerica-appears-on-the-inc-5005000-list-for-ninth-consecutive-year/.

and/or ScribeAmerica's officers, agents, employees, or representatives, while actively engaged in the management of ScribeAmerica's businesses or affairs and with the authorization of the ScribeAmerica.

9. ScribeAmerica employed Plaintiff and continues to employ similarly situated employees.

10. At all times relevant, Plaintiff was an employee of ScribeAmerica and was covered by the FLSA and the NHMWL.

11. ScribeAmerica is an employer covered by the FLSA and the NHMWL.

12. ScribeAmerica employs individuals engaged in commerce, in the production of goods for commerce, or in an enterprise engaged in commerce or in the production of goods for commerce, as required by 29 U.S.C. §§ 206-207.

13. ScribeAmerica's annual gross volume of business exceeds $500,000.

## CLASS AND COLLECTIVE DEFINITIONS

14. Plaintiff brings Count I of this Complaint pursuant to the FLSA, 29 U.S.C. § 216(b) as a collective action on behalf of herself and the following collective of potential opt-in litigants:

> All current or former employees of ScribeAmerica, LLC ("ScribeAmerica") who were employed as Medical Scribes in the United States and who were not paid for all compensable time throughout ScribeAmerica's training program during the past three (3) years ("FLSA Collective" or "Collective Members").

15. Plaintiff brings Count II of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3), on behalf of herself and the following class:

> All current or former employees of ScribeAmerica, LLC ("ScribeAmerica") who were employed as Medical Scribes in New Hampshire and who were not paid for all compensable time throughout ScribeAmerica's training program during the past three (3) years ("New Hampshire Class").

16. The FLSA Collective and the New Hampshire Class are together referred to herein

as the "Classes" or the "Class Members."

17.   Plaintiff reserves the right to redefine the Classes prior to notice, class certification, or collective certification, and thereafter, as necessary.

## FACTS

18.   ScribeAmerica employs Medical Scribes, such as Plaintiff, in forty-eight states and the District of Columbia, including in New Hampshire, California, and in this judicial District.

19.   Medical Scribes assist licensed healthcare providers (physicians, nurse practitioners, physician assistants, etc.) by observing and documenting patient encounters. Medical Scribes handle all aspects of medical documentation during patient visits including the patient's history, physical exam, lab and imaging results, consults, updates, disposition, and diagnosis. Use of Medical Scribes improves patient experiences, relieves the administrative burden on physicians, and improves the efficiency and productivity of patient visits.

20.   From approximately March 18, 2022, through May 16, 2022, ScribeAmerica employed Plaintiff as a Remote Medical Scribe at the University of California San Francisco (UCSF) Medical Center. Plaintiff lived and worked from her home in Plymouth, New Hampshire.

21.   ScribeAmerica classified Plaintiff and Class Members as hourly, non-exempt employees under the FLSA and related state laws.

22.   ScribeAmerica paid Plaintiff a base hourly rate of $10 per hour on a biweekly basis. Upon information and belief, Class Members were also paid an hourly rate of approximately $10 per hour on a biweekly basis.

23.   Plaintiff signed an offer letter with the above rate of pay and understood that she would be paid during ScribeAmerica's training and guaranteed continued employment upon successful completion of the training program.

24. After being hired by ScribeAmerica, and in order to remain employed by ScribeAmerica, Medical Scribes are required to complete ScribeAmerica's training program (ScribeUniversity), which includes: (1) 15-20 hours of classroom instruction covering medical terminology, anatomy, pathophysiology, procedures, medical billing, and documentation; (2) a comprehensive final exam; and (3) site-specific live clinical training.

25. ScribeAmerica's training took four (4) to six (6) weeks to complete. ScribeAmerica spread the 15-20 hours of classroom instruction out over two (2) to four (4) weeks.

26. The classroom training portion involved approximately five (5) hours per week of live in-person or virtual classes with a ScribeAmerica instructor and other Medical Scribes in training.

27. The material taught throughout the training directly related to the work of a Medical Scribe. The classroom instruction focused on the following topics: medical terminology, anatomy, pathophysiology, procedures, legal documentation, basic medical decision making, and medical billing and documentation.

28. Medical Scribes were also required to complete floor training where they received non-fungible, site-specific training that covered a facility orientation; medical documentation systems utilized at their assigned hospital or out-patient provider site; medical communication and documentation systems; facility procedures, and site-specific preferences in chart writing.

29. After completion of the classroom training and comprehensive exam, the final phase of training culminates with five (5) days of live clinical training. On the first day, Scribes begin by shadowing a trained Medical Scribe and completing three (3) charts independently. Thereafter, Scribes progressively take on more responsibilities each day, and by the fifth day Medical Scribes fully assume the Scribe role, independently completing patient encounters and all

documentation.

29. While in clinical training, Medical Scribes replace regular trained employees and perform actual productive work for ScribeAmerica's clients.

31. This live clinical work directly benefits ScribeAmerica by providing services to its paying clients. Additionally, ScribeAmerica derives the benefit of ensuring a pipeline of trained Medical Scribes which its needs to service its ever-growing client base of healthcare providers.[2]

32. ScribeAmerica conditioned the continued employment of Plaintiff and Class Members on their successful completion of its training program.

33. After signing her offer letter, Plaintiff spent the first four (4) to six (6) weeks of her employment completing the online classroom training and preparing for the comprehensive exam.

34. Plaintiff was required to complete the online classes according to a schedule set by ScribeAmerica. Classes met multiple times a week and ranged from one to three and a half hours.

35. During training, ScribeAmerica instructed Plaintiff to clock-in when classes began and clock-out when classes ended.

36. Due to the volume and complexity of the material presented each class, Plaintiff and Class Members were expected and required to spend substantial amounts of time outside of class reading, reviewing, and studying the class materials provided by ScribeAmerica. The minimal hours of paid classroom instruction were insufficient for Medical Scribes to properly learn the required material they needed to know to pass unit quizzes and the comprehensive exam.

37. To ensure that Medical Scribes were progressing through the material, ScribeAmerica required Plaintiff and Class Members to pass quizzes each class period on the

---

[2] *See* Who We Are, ScribeAmerica.com ("We are the nation's most frequently used medical scribe company with more than 25,000 employees in 50 states providing professional services for over 3,500 clients. . . . "We are ranked on the Inc. 5000 list ten years in a row for fastest growing private companies.") (last visited March 27, 2023) https://www.scribeamerica.com/who-we-are/

information presented in the prior class. Failure to pass the required quizzes could prevent Medical Scribes from progressing through training and ultimately lead to termination.

38. ScribeAmerica's training instructors encouraged Plaintiff and Class Members to study training materials outside of class time. Training instructors also required Plaintiff and Class Members to complete assignments outside of class time to build the documentation skills Medical Scribes were taught. Such assignments included reading or watching online videos of mock patient encounters and completing patient encounter notes to submit the following class.

39. In addition, ScribeAmerica required Plaintiff and Class Members to complete ten (10) medical speed typing tests per day off the clock and email their results to the Chief Scribe overseeing their training. The typing tests required 100% accuracy and were designed to increase a Medical Scribe's typing speed. Plaintiff estimates that the typing tests took between twenty (20) and ninety (90) minutes to complete each day.

40. Plaintiff routinely spent approximately 10-20 hours each week—outside of class and off the clock—completing mandatory assignments, taking daily typing tests, and studying required material on medical terminology, medical procedures, proper documentation, and ScribeAmerica's policies and procedures to pass quizzes and the final comprehensive exam. Plaintiff observed other Class Members working similar schedules and being subject to similar requirements.

41. ScribeAmerica routinely suffered and permitted Plaintiff and the Class Members to complete unpaid off-the-clock work during training.

42. Specifically, ScribeAmerica knew that Plaintiff and the Class Members completed such off the clock work because ScribeAmerica required Medical Scribes to complete assignments and typing tests while off the clock; ScribeAmerica instructors expected and encouraged Medical

Scribes to study outside of class time; and because it would not be possible for Medical Scribes to learn the required material and pass the required quizzes and comprehensive exam without extensive study outside of class time.

43.     Furthermore, ScribeAmerica's own training materials instructed Medical Scribes to complete independent study outside of paid class time. For example, prior to their first training, Medical Scribes are instructed to study and memorize six pages of complex medical jargon.

44.     ScribeAmerica also scheduled its 15-20 hours of instructional class time over the course of multiple weeks to allow sufficient time for Medical Scribes to complete the necessary studying outside of class.

45.     Despite knowing that Plaintiff and Class Members spent hours studying while off-the-clock, ScribeAmerica maintained a policy of only paying Medical Scribes for the time spent in live classroom training sessions.

46.     ScribeAmerica did not pay Plaintiff or the Class Members minimum wage or any other wages for time spent studying or completing assignments while outside of class.

47.     To the best of her recollection, Plaintiff worked 10-20 uncompensated hours off the clock during the vast majority or all of her workweeks as a Medical Scribe during this training period. Specifically, Plaintiff routinely worked in excess of fifteen (15) hours per week between March and May 2022.

48.     As a large company with operations throughout the United States, there is no question that ScribeAmerica has access to human resource expertise and legal counsel who can advise ScribeAmerica on its FLSA and state wage and hour law compliance obligations.

49.     ScribeAmerica has acted willfully and/or with reckless disregard of the applicable FLSA provisions, by failing to properly compensate Plaintiff and the Class Members for all hours

worked.

50. Moreover, during the entire relevant time period, ScribeAmerica was aware that Plaintiff and the Class Members were not properly compensated under the FLSA or applicable state laws because ScribeAmerica's managers and other supervisory employees knew that Plaintiff and Class Members were working outside of their scheduled training time to complete the requisite trainings and prepare for their quizzes.

51. In fact, ScribeAmerica's training materials and trainers instructed and encouraged Medical Scribes to study the materials outside of paid classroom training; yet ScribeAmerica failed to compensate Plaintiff and Class Members for this time.

52. ScribeAmerica intentionally recruits and markets itself to college students and aspiring medical students, who are used to extensive study requirements and are unlikely to challenge ScribeAmerica's policy of unpaid study time during its training program.

53. ScribeAmerica's unlawful training compensation policies, in which Plaintiff and Class Members were not compensated for all time worked does not comply with the requirements of the FLSA and applicable state law.

54. ScribeAmerica has not accurately recorded and tracked all of the hours worked by Plaintiff and Class Members and therefore has failed to compensate Plaintiff and the Class Members minimum wages for all hours worked.

55. Furthermore, ScribeAmerica failed to properly track, monitor, or record the actual number of hours per day that Plaintiff and the Class Members worked, as required by the FLSA. *See* 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

**ScribeAmerica's Failure to Properly Pay Medical Scribes is Willful**

56. ScribeAmerica's actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA and state law.

57. Even though the FLSA and applicable state law requires compensation of minimum wages for all hours worked, ScribeAmerica did not and does not pay Medical Scribes, such as Plaintiff, proper minimum wage compensation for all hours worked.

58. ScribeAmerica knows, or absent its own recklessness should have known, that the Class Members were entitled to such minimum wages.

59. ScribeAmerica is a large corporation that employs sophisticated General Counsel and experienced human resource professionals that can sufficiently determine ScribeAmerica's wage and hour obligations under the FLSA and state law.

60. ScribeAmerica was on notice for paying employees proper minimum and overtime wages because it has previously been sued for and settled claims over alleged wage and hour violations.[3]

61. ScribeAmerica has failed to pay Plaintiff and Class Members all minimum wages owed.

62. By failing to pay all the compensation owed to Plaintiff and Class Members, ScribeAmerica has acted willfully and with reckless disregard of clearly applicable FLSA and state law provisions.

63. Defendant has not made good-faith efforts to comply with the FLSA and applicable state law.

---

[3] *See* Complaint, *Elayda v. ScribeAmerica, LLC*, No. S-CV-0044431 (Cal. Super. Ct. Feb. 4, 2020).

## COLLECTIVE ACTION ALLEGATIONS

64. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective as defined above.

65. Plaintiff desires to pursue her FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

66. Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals currently work or have worked pursuant to ScribeAmerica's previously described common business practices and, as a result of such practices, have not been paid the full and legally mandated minimum wage for all hours worked during the workweek. Resolution of this action requires inquiry into common facts, including ScribeAmerica's common compensation, timekeeping, and payroll practices.

67. Specifically, ScribeAmerica paid Plaintiff and the FLSA Collective Members on an hourly basis but failed to pay Plaintiff and Collective Members minimum wages for all hours worked during training as a result of its policy to only pay Medical Scribes for time spent in live classroom training sessions, regardless of the number of hours they actually worked.

68. The similarly situated employees are known to ScribeAmerica, are readily identifiable, and can be located through ScribeAmerica's records. ScribeAmerica employs many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff brings this action on behalf of herself, and the New Hampshire Class as defined above, pursuant to FED. R. CIV. P. 23 and N.H. Rev. Stat. Ann. § 279:29.

70.     The members of the New Hampshire Class are so numerous that joinder of all members is impracticable.

71.     Plaintiff will fairly and adequately represent and protect the interests of the New Hampshire Class because there is no conflict between the claims of Plaintiff and those of the New Hampshire Class, and Plaintiff's claims are typical of the claims of the New Hampshire Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

72.     There are questions of law and fact common to the proposed New Hampshire Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether ScribeAmerica has violated and continues to violate New Hampshire law through its common policy or practice of not paying its Medical Scribes minimum wage.

73.     Plaintiff's claims are typical of the claims of the New Hampshire Class in the following ways: (1) Plaintiff is a member of the New Hampshire Class; (2) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the New Hampshire Class; (3) Plaintiff's claims are based on the same legal and remedial theories as those of the New Hampshire Class and involve similar factual circumstances; (4) there are no conflicts between the interests of Plaintiff and members of the New Hampshire Class; and (5) the injuries suffered by Plaintiff are similar to the injuries suffered by members of the New Hampshire Class.

74.     Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions

of law and fact common to the New Hampshire Class predominate over any questions affecting only individual Class members.

75. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The New Hampshire Class member are readily identifiable from ScribeAmerica's own employment records. Prosecution of separate actions by individual members of the New Hampshire Class would create the risk of inconsistent or varying adjudications with respect to individual New Hampshire Class members that would establish incompatible standards of conduct for ScribeAmerica.

76. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the New Hampshire Class members, while substantial, are not great enough to enable them to maintain separate suits against ScribeAmerica.

77. Without a class action, ScribeAmerica will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff and the New Hampshire Class.

78. Plaintiff envisions no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of the FLSA**
**(On Behalf Plaintiff and the FLSA Collective)**

79. All previous paragraphs are incorporated as though fully set forth herein.

80. The FLSA requires that covered employees be compensated not less than the federal minimum wage for all hours worked in a workweek. *See* 29 U.S.C. § 206(a)(1).

81. The FLSA defines "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d).

82. ScribeAmerica is subject to the wage requirements of the FLSA because ScribeAmerica is an "employer" under 29 U.S.C. § 203(d).

83. ScribeAmerica's compensation scheme applicable to Plaintiff and the FLSA Collective fails to comply with 29 U.S.C. § 206(a)(1).

84. During all relevant times, Plaintiff and the FLSA Collective were covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

85. ScribeAmerica knowingly failed to compensate Plaintiff and the FLSA Collective at a rate of not less than the federal minimum wage for all hours worked per week, in violation of 29 U.S.C. § 206(a)(1).

86. Plaintiff and the FLSA Collective are entitled to be paid minimum wage for all hours worked in a workweek pursuant to 29 U.S.C. § 206(a)(1).

87. ScribeAmerica, pursuant to its policies and practices, failed and refused to pay minimum wages to Plaintiff and the FLSA Collective for all hours worked by maintaining a policy of only paying Medical Scribes for the time spent in live classroom trainings.

88. ScribeAmerica knowingly failed to compensate Plaintiff and the FLSA Collective at the minimum wage for all hours worked per week, in violation of 29 U.S.C. § 206(a)(1).

89. ScribeAmerica also failed to make, keep and preserve records with respect to Plaintiff and the FLSA Collective sufficient to determine their wages, hours, and other conditions

of employment, in violation of 29 C.F.R. § 516.2(a)(7).

90.  In violating the FLSA, ScribeAmerica has acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**COUNT II**
**Violation of the New Hampshire Minimum Wage Law**
**(On Behalf of Plaintiff and the New Hampshire Class)**

91.  All previous paragraphs are incorporated as though fully set forth herein.

92.  The New Hampshire Minimum Wage Law, N.H. Rev. Stat. Ann. § 279, *et seq*. ("NHMWL"), requires that covered employees be compensated at an hourly rate not less than the federal minimum wage. *See* N.H. Rev. Stat. Ann. § 279:21.

93.  Plaintiff and the New Hampshire Class are employees of ScribeAmerica within the meaning of N.H. Rev. Stat. Ann. § 279:1(X).

94.  ScribeAmerica was or is the employer of Plaintiff and the New Hampshire Class within the meaning of N.H. Rev. Stat. Ann. § 279:1(XI).

95.  Plaintiff and the New Hampshire Class routinely worked 10-20 hours off the clock each week during ScribeAmerica's training. ScribeAmerica did not pay Plaintiff and the New Hampshire Class for the off-the-clock hours worked.

96.  ScribeAmerica, by its policies and practices, failed to pay the requisite minimum wage to Plaintiff and other members of the New Hampshire Class, as mandated by N.H. Rev. Stat. Ann. § 279:21.

97.  As a direct and proximate result of ScribeAmerica's unlawful conduct, Plaintiff and members of the New Hampshire Class have suffered and will continue to suffer a loss of income and other damages. Pursuant to N.H. Rev. Stat. Ann. § 279:29 of the NHMWL, Plaintiff and the New Hampshire Class are entitled to an award of damages for their uncompensated minimum

wages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks the following relief on behalf of herself and all others similarly situated:

A. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

B. Authorizing prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to be sent to all potential FLSA Collective Members;

C. An order permitting this litigation to proceed as a class action on behalf of the New Hampshire Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments, and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

E. Injunctive relief to the fullest extent permitted under the law;

F. Liquidated damages to the fullest extent permitted under the law;

G. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

H. Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated: April 5, 2023                                         Respectfully submitted,

*/s/ Janet R. Varnell*
Janet Varnell; FBN: 0071072
Brian W. Warwick; FBN 0605573
**VARNELL & WARWICK P.A.**
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
Telephone:  (352) 753-8600
Facsimile:  (352) 504-3301

jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
ckoerner@vandwlaw.com

Camille Fundora Rodriguez*
Alexandra K. Piazza*
Michael J. Anderson*
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
crodriguez@bm.net
apiazza@bm.net
manderson@bm.net

*Attorneys for Plaintiff and the Proposed Collective*

*\*Application for Admission Pro Hac Vice to be Filed*